Our next case is United States v. Lightfoot. Mr. Patel, we're glad to hear from you. At issue in this case is whether the Michigan Bank Safe and Vault Robbery statute qualifies as a serious violent felony under the Three Strikes Mandatory Life Provision. It does not, Your Honors. Michigan bank robbery is an indivisible offense with alternative means, including one, safe cracking, and two, assaultive robbery. At least one of these means, safe cracking can be committed by applying force to property, for example, breaking a safe even when nobody is around. Now, Your Honor, the government does not contest that that conduct falls outside of the serious violent felony definition. Nonetheless, the government says that the Michigan bank robbery statute is divisible between assaultive robbery and safe cracking. In other words, the government is saying that they are two separate offenses with alternative elements. But, Your Honor, the government's argument is squarely defeated by BORD, People v. BORD, which is a binding Michigan Court of Appeals decision, which without any hesitation said that Michigan bank robbery is only one offense that may be committed by multiple means. Now, Your Honor, that was not just a passing statement. The court clarified, supported, repeated, and reinforced that statement throughout the decision. So, under Mathis, this is an easy case. In Mathis, the Supreme Court said... Well, if four were the only Michigan case, I'd say that's true, but it seems like there's a whole bunch of them out there and they go multiple different ways. Well, Your Honor, it's the only binding case that goes that way. And it's important here that the BORD case is the last word on this case and it's the only binding case. So, the government relies on Campbell, but Campbell, as the BORD court explained, is not binding precedent because it came before November 1, 1990. And under Michigan law, that is not binding precedent. So, essentially, it's like an unpublished decision that they rely on. I think in rebuttal is that, well, this really is... When the Michigan Intermediate Court made this decision, it wasn't really in the divisibility context that we look at in federal criminal law. And we have cases that seem to indicate that a lot of times we're looking for cases that deal with jury instructions, to see how the jury is instructed on what elements must be proven. And we don't have that here. It doesn't mean your argument's incorrect, but it's not quite as clear as it could be in other contexts. Your Honor, I would disagree respectfully. It is clear here. We know that it's clear. Because even though they didn't use the word unanimity, we know what means are in Michigan. Because the Michigan Court of Appeals have repeatedly said that means are components of a statute that a jury does not have to unanimously select. Exactly what Mathis says, Your Honor. In fact, in Fort itself, the court, when it said, this court and our Supreme Court have held in other contexts, that although a statute may be violated by multiple means, one criminal offense is created, the court then cited to People v. Johnson, which confirms that the court was talking about means in the Mathis sets. Because that People v. Johnson case, that issue was a Michigan sexual assault statute. It was a Michigan sexual assault statute with various aggravating factors. Well, what did the Court of Appeals hold? The Court of Appeals said it's a single offense with alternative means because the jury doesn't have to unanimously select one provision to the exclusion of the other. So, Your Honor, when the Ford Court cited to People v. Johnson and referred to means, it meant means in the Mathis sense. But the court often talks about, in all these cases, the Michigan Court of Appeals talks about the focus of the statute. And that's what they take to be indicative of whether there's one crime or multiple crimes. And they talk about the focus of the statute or the societal norm at issue that would make it, in their opinion, unjust to punish someone for both crimes. An example they give in one of the cases, I think it's Campbell, is larceny over $100 and larceny of a building. And they say, well, they're different, but they're similar enough that it would be unjust to punish someone for both for the same incident. That's really different than what we're talking about when we talk about elements versus means for divisibility analysis. We're just trying to understand, are these different offenses with different elements so that we can know someone was convicted of A instead of B, right? It seems to me what they're talking about is just completely different, and they're talking about double jeopardy, than what we're looking for to understand are these multiple crimes or a single crime. I mean, they even point out, they say assault of bank robbery and armed robbery are too similar to both be punished, so they're the same crime with just different means, but they're in different statutes. They're not even in the same statutory section. We would certainly say categorically those are two different crimes. Well, Your Honor, so two points. First of all, even though the social norms test isn't a strictly elements-based test, in this case, the court did, in fact, look to the elements of Michigan bank robbery and conclude that it's a single offense with alternative means. And again, when they were talking about it, we know what they meant by means. Means because the Michigan Court of Appeals has repeatedly said means are components of a statute that the jury doesn't have to unanimously select. And then they use that finding in support of the conclusion that Michigan bank robbery only has a single norm. But also, Your Honor, the double jeopardy test, it's an elements-based test that the court conducted here, which also confirms that Michigan bank robbery is a single offense. I mean, it may be elements-based in some way, but it's not elements-based in the way that we're talking about for purposes of jury unanimity and the categorical approach. So, like, it doesn't, I'm not sure we can have a lot of confidence that these Michigan cases are the end-all, be-all of this question just because they used the word means. Well, Your Honor, so numerous federal courts have held that the elements-based double jeopardy analysis is absolutely relevant to divisibility. Because if, let's say there's two statutory provisions that have different... But that's not what they do. I mean, they hold up statutes that have different elements and say these are different, but they're similar enough to have a double jeopardy problem. That's just not what Michigan courts do. They don't do, in none of these cases, are strict blockburger. But, Your Honor, in Ford, the court did conduct a blockburger elements-based test. And in the course of that confirmed that Michigan bank robbery is a single offense. The way they did that, Your Honor, is they found that Michigan armed robbery and Michigan bank robbery are two different offenses because each offense has an element, the other does not. But in the course of doing that, they treated Michigan bank robbery as only a single offense with a single set of elements. Your Honor, if Michigan bank robbery was two different offenses with two separate sets of elements, then the Ford court would have had to compare Michigan armed robbery to two different offenses. But that's not what the court did, Your Honor. The court instead treated it as a single offense. Also, Your Honor, even if this court does not think that Ford is conclusive on this issue, it's certainly leaning toward finding that the offense is indivisible, Your Honor. When the court says throughout the opinion it's a single offense with alternative means, at the least, like it's leaning toward that finding. And what Mathis says, it sets a two-part test. It says, okay, first, if the law is clear on divisibility, that's the end of the inquiry. And we think it should be the end of the inquiry here. But then the court says that if the law is unclear, then even then you apply the Mathis default rule and find that the statute is indivisible because then the government hasn't met its heavy burden to prove with certainty that the statute is divisible. And, Your Honor, at least I think even this court will agree that in light of Ford, if there is ambiguity, that is the default rule that should apply here. And there are several cases, Your Honor, that have applied this default rule. They've adhered to this default rule when it was ambiguous, whether the statute was divisible or not. And, in fact, Your Honor, I would turn this court's attention to this court's decision in Hope, in United States v. Hope, where I think there was much more ambiguity than there is here, yet the court found that the statute was indivisible. So in that case, at issue was whether a South Carolina statute that prohibited the possession of drugs near a school were a part, whether that was indivisible by drug type. Well, the court found that it was indivisible by drug type, even though there was no state Supreme Court decision and there wasn't even an intermediate appellate court decision ever saying that it was a single offense with alternative means or even speaking to divisibility. So the court said, this is a close case. There's some language in the statute that leans toward a finding that the offense is indivisible. But the court, it was ambiguous, yet the court found that the statute was indivisible. But here we have a case, we have Ford, which if it doesn't conclusively, certainly it leans toward a finding that the offense is indivisible. Well, why don't we just assume for purposes of argument that the statute is divisible. So what happens then? So your Honor, even if the statute is divisible, it still doesn't qualify as a serious violent felony. And this is our alternative argument because even assaulted robbery can be committed by merely confining another. And that doesn't equal the use of force. We cited to several decisions. Can we talk about, I don't want to keep you from talking about force, but the district court decided this on the consists of robbery part of the statute, not the use of force, right? So does it, is Michigan bank robbery a crime that consists of robbery? I'm sorry, Your Honor, I don't understand the question. Under 3559, a serious violent felony means a state offense consisting of robbery. Right, Your Honor. So I think you're talking about the enumerated offenses clause, right? No, this does not consist of that because those robberies require the use or threat of force against another. None of them can be committed by confining another. So that changes the essential nature here. But in Johnson, in our Johnson decision, which is kind of our main decision analyzing this provision about robbery, you know, we emphasize that Congress couldn't have been broader when it was describing what counts, right? So it's consisting of robbery as described in these statutes. And then each of those federal statutes include from the person or presence on the person or presence of another. But we said in Johnson, we're not bothered by that, even though the state statute doesn't require person or presence of another. It still consists of robbery in the sort of general sense that it's meant in this statute. So what are we supposed to do with all of that? Your Honor, so I think that was a very different case. There, the court said that the robbery has to be of an essential nature that is similar to the enumerated offenses. So in that case, all of the robberies, the New York robbery and the enumerated robberies, they all required at least force or threat of force. Not just force, it was force or intimidation, fear, this sort of what we generally, you know, what they generally are getting at. Right, intimidation, Your Honor, is effectively threat of force. And so there was really no difference substantively with respect to the essential core. What the defense was arguing in Johnson is that the jurisdictional element was different. We said a lot more than that, didn't we? Well, that was one of the defense's central arguments. But the core was that there was force or threat of force. So that meant it was essentially the same. But when we're talking about confining another, that is not the force or threat of force. It makes it very different. It is not the same. It's not the essentially the same. It's not the essence of the robberies that are included in the enumerated offenses. So your argument is someone could be confined without ever being put in fear. Confinement would be a larceny, a bank larceny. It would be like a safe cracking. This person never knew that there was any danger and someone took money from the bank. I mean, that has to be your argument, right, that it's not like the essential nature of robbery because the statute uses the word confinement among other personal injuries. Well, Your Honor, one thing I wanted to point out, even though this is a bank robbery statute, it's called bank robbery statute, it's made clear, and actually Ford made this clear too, that the robbery can even occur in a home. It doesn't have to occur in a bank as long as the robbery is of a vault or safe. Well, that's it. We're assuming it's divisible, right? No, but even, I'm saying even under the assaultive robbery part, it doesn't have to occur within the bank. And so what I'm saying is that somebody could break into somebody's house, right, and confine somebody, just lock the person in a room, not because they want to threaten force, not because they want to injure the person. And that person wouldn't be in fear? Well, Your Honor, look, even if we assume that that person is inherently in fear, I would say that when you look at the statute, it says confining or putting in fear, so they're not the same thing. But let's assume that they're the same thing. But it also says maiming or putting in fear. And everyone who's maimed is in fear, right? These aren't all mutually exclusive. Your Honor, even if we assume that it inherently requires putting somebody in fear of injury, it still doesn't qualify after Borden. Borden says that there must be the intentional threat of force. And there's several cases. There's the Fifth Circuit's case in U.S. v. Garner. There's the Eleventh Circuit case in U.S. v. Carter, which found that even when there were assault statutes that required putting somebody in fear of injury, they didn't qualify because they didn't require the intent to put somebody in fear of injury. So I don't want to monopolize your time, but I have one more question about how 3559 operates. It's a very, in my opinion, it's a strange categorical approach for us to do here  But then Congress gave us fact-specific, case-specific carve-outs that seem to limit it to aggravated robbery, right? If the defendant can prove that he didn't use a firearm or the offense didn't result in death or serious bodily injury, it doesn't count as a serious violent felony. Here the defendant can't do that. He used a firearm. So we know that his crime is one of the sort of aggravated robberies that Congress is, in a fact-specific way, Congress is trying to include. Does that or should that at all inform our categorical analysis? How do these two work together? How could it not categorically, I mean, certainly it could not categorically be under a robbery statute, but he could have committed an aggravated robbery. Your Honor, I think that the facts that you were talking about, the carve-out, is more like an affirmative defense. But we don't even get there because categorically this statute can be committed by confining another. So our position is that, yes, that is absolutely a categorical approach before we get to, so the carve-out, I think, is in favor of the defendant if we can show that there were facts there, that there wasn't a gun used, that there wasn't any serious injury. But I don't think that's relevant here because we're not making that argument. We're just relying on the categorical approach with respect to the robbery because it criminalizes confining. Well, let me ask you a question about the confinement. This court in United States v. Johnson says that we're supposed to look at the essential nature of the crime, and it says we're not to look at minor definitional tweaks or wrinkles. So you're using the word confinement. Is that not looking at the nature of the crime and it's just a definitional tweak that you've pulled out? Your Honor, I would disagree because it is very substantively different. We have cases, as I cited in my brief, where courts found that hostage-taking, unlawful restraint statutes, false imprisonment statute, didn't qualify specifically because they criminalized confining another. So, for example, the Fifth Circuit explained in Picasso-Lucas, a threat to continue to keep somebody locked in a room does not necessarily contain an implicit threat of starvation or bodily harm. What is necessarily implicit in the threat is this, the person will be stuck in a room. This is unlike threatening to poison somebody. Implicit in that threat is a death or bodily harm. So it is very different, Your Honor, confining v. another. Courts have consistently held that when statutes criminalize confining another, that is not force or threat of force. Again, you're not talking about fear, and I understand you're focusing on force, but the consist of robbery includes more than just force or use of force or threat of force. The statute requires the threat of force, and I agree, Your Honor, that fear of injury, if it's intentionally putting somebody in fear of injury, then yes, that also qualifies as a threat of force. No, I mean robbery doesn't require threat of force. It can be done by intimidation, fear. There are many, many examples where the bank robber never threatens force, but they come in and say, give me the money, and courts say a reasonable person would be put in fear, and that's enough to be robbery. But Your Honor, I think that we're talking about putting somebody in fear of injury is very different from intentionally putting somebody in fear of injury. Like, as these circuits, as the 11th Circuit and 5th Circuit have found, that is... So you're saying someone could do that without knowing. They wouldn't think that someone would reasonably be put in fear? Well, Your Honor, we're looking at the minimum conduct, right, that's required under these circumstances. So, yeah, if just confining somebody in a room, Your Honor, I think that it doesn't have to have this intent. It may be just an intent to keep somebody locked while somebody carries out the crime, the theft of the robbery. All right, thank you, Mr. Patel. You've got some rebuttal time. Mr. Gray? Yes, Your Honor. May it please the Court, my name is Jefferson Gray. I am counsel for the United States in this matter. So, Mr. Gray, if you'd move over at the podium, then that will pick your voice up much better. We're here this morning in a case that falls within the very most inner core of the types of defendants and the types of their crimes that Congress had in its contemplation when it passed the Three Strikes Law. That is, in this case, a defendant who is on at least three prior occasions been convicted of serious violent felonies. Once as far back as 1985, after which he served a sentence of approximately four years in prison. Twice in the space of a month, in 1989 and 1990. And those two violent bank robberies basically jointly constitute his second qualified felony offense. Those are all good policy reasons why we wish the Congress or the Supreme Court would ditch our current mode of operation with the categorical approach, but they haven't, so we're stuck with it. So we're going to have to wander through the Byzantine analysis part instead. Indeed we are, Your Honor, but I think it's worth keeping in mind ultimately that this, in a lot of cases, it's very hard to get to certain knowledge of what happened all those years ago. The fact that in this case, we actually are ultimately at the end of the modified categorical approach, are able to look at the two charging documents from 1990 to tell us exactly what happened, who the victims were, what their names were, Andrew Wall, Jennifer Collier. But how do you get there if Ford and Ford, the court says, uses the word means, means, means, and they come back six years later in Clemens and cite Ford, uses the word means, means, means. How are you getting to the modified categorical approach? We get there pretty easily, actually, and as Judge Agee's statement suggests, he used the words for the Byzantine means. As I was thinking about it coming down here last night, I was thinking about the thicket that one has to pass through under the categorical approach, the modified categorical approach. And in this case, whenever you pass through a thicket, there may occasionally be a vine or maybe a root that you can stumble over that perhaps will trick you up a little bit. And in this case, it's further complicated because that thicket that you have to go through here, the history of Michigan Supreme Court and the Court of Appeals decisions over the period from the 1970s up through 2007, is a judicial civil war. And that judicial civil war was fought over the issue of what is the proper approach to double jeopardy in cases involving robbery under Michigan law. And Ford is merely one of the battles and by no means one of the more significant battles in that war. And Ford itself... Am I right that the government has conceded that if the statute is indivisible, government loses? Yes, the government did. The government relied on the modified categorical contention. The statute is divisible and we think it clearly, clearly is. Absolutely. I mean, in addition to that, that's how it was presented in the court below, that we would move directly into the modified categorical approach. But I think the divisibility is absolutely clear. And let me finish what I was saying a moment ago. That judicial civil war in the Michigan courts over the meaning of double jeopardy, how it should be applied, started back in 1973. And there was a serious question in the minds of some Michigan judges as to whether the Blockburger approach was really the proper way to go. And it was even suggested that they thought Blockburger was on its way out even at the federal level. So Michigan also had its own, derived from its constitution, ultimately state case law, approach to double jeopardy, which turned on not so much the elements of the offense, but what social norms they thought the statute was intended to get at. And the ultimate affamatics of that particular judicial civil war in Michigan was a case that was handed down just a couple of years after the Ford case. And that case came out on the end of, we are going to follow the federal Blockburger standard. And as a matter of fact, if you look at it in the copy of Ford that I have, yes, not the copy of Ford, but other cases I have at Cyborg, include a little symbol next to Ford indicating that there is some question as to whether it was overruled by the subsequent case that put an end to that civil war. Because when Ford was decided, that issue of our state social norms approach versus the federal Blockburger elements approach was still in doubt, still in context. So should we consider certifying this question to the Michigan Supreme Court? Certification is a tool that federal appeals courts have in their toolbox to use when it is necessary, appropriate, or useful to do so. You could do that here. It has certainly been done. I know we can. Should we? Certification has been done by this court in the relatively recent past decision in a case called Dixon, which our state does. My answer is no. And my reason for that, I have a couple of reasons for that. The first one, first and foremost, is I don't think it's necessary. And certification conceivably has benefits, but it has very significant costs as well. One of the most profound of those costs is the delay that necessarily results. And in the Dixon case, for example, which I did look at as an example before circuit referral to our court of appeals, that delay was somewhere in the range of the time the issue was first raised in this court, 12 to 14 months before a decision came back. I have seen circumstances where the certification basically winds up doing no good because for some reason, it sounds like a remarkable thing, but I have seen cases where the state's report said either, sorry, you don't think we actually have jurisdiction on the question you're asking, or in one remarkable instance, we think the answer is perfectly clear and you don't need us to sit down and write a decision about it. Well, obviously it's not perfectly clear if the Sixth Circuit has a definition. The Sixth Circuit case, the other cases we hear again today on this, is it definitively answered by Ford or is it Campbell? Not only is it not definitively answered by Ford, but Ford clearly is not the answer. And there are a number of ways we can easily tell that. Let me ask you another question. The question is wouldn't it benefit for us to certify a question to the Michigan Supreme Court? And you said delay. And I guess usually when you think about delay, how does a delay affect your client? I know it affects Mr. Lightfoot, but you're proposing that the reason not to do it is because of delay. It affects an awful lot of individuals and folks who have an interest here. Because, for example, if we certify this case to the Michigan Supreme Court and they accept certification, it's then going to have to be briefed in the Michigan Supreme Court, which means another round of briefing on the part of Mr. Patel and our office as well. Beyond that, other parties are now going to have an interest in it. The Michigan State Attorney General's Office, Criminal Appeals Division, is going to have an interest in that question. I'm sure that whatever the Public Defender's Office is at the state level in Michigan, they will also have an interest in that question and they will want to weigh in on it. On top of that, the Michigan Supreme Court is going to be asked to produce a decision. And if you look at the decision, for example, that Judge Buran of the Maryland Court of Appeals produced in response to the case I was able to find, Dixon, that this court put to them, it was like a 20-page decision. It was a very substantial consideration. And so then it comes back here. We have to have another round of briefing. We come right back to where we are today in front of this court. This case has now been going on since May of 2016. It is now seven years and three months old already. Now, you could make that argument in any case that we've certified over the years. They all involve that sort of a delay. There's always going to be an additional cost. We can factor that in. But I don't think that's ever been the deciding factor on certification, at least the cases I've been involved in. But if you, if the government concedes that it loses if the statute is indivisible, then it seems like we could analyze the case by simply assuming that the statute was divisible if we reach the same result in the divisibility analysis. And as I understand Mr. Patel's argument, he says that the Michigan statute by its terms, because it can be the crime of Michigan State bank robbery, can be committed by the defendant who watches until the tellers wander into the back room and closes the door and locks it and then makes off with the cash, that by use of this term confinement, which is not in the enumerated federal bankruptcy statute, that under the categorical approach you would lose then as well. Your Honor, I submit that there is no way that we lose under the modified categorical approach here. I don't think we would lose really under the categorical approach either. But certainly what we have here is... Well, but in that example where the tellers are simply locked, unbeknownst to them, into the back room by this clever thief, there isn't the use of force, violence, or intimidation. He just locks the door and makes off with some cash. And as I think Judge Massitti indicated below, I think he described it as a strained or fanciful hypothetical. And so the question the court has to wrestle with there... Well, if confinement wasn't in the statute, I think that would be a good argument. But for reasons who knows why, that's what the Michigan legislature wrote into this statute. They wrote it in for a very good reason. And it's important to see exactly where it appears. It appears here in the first clause. Clearly, the Michigan statute consists of the crime of assaultive bank robbery. And in that sense, Mr. Battelle is right. As to the elements of these first three assaultive bank robbery offenses, those are things that ultimately only create the one crime of assaultive bank robbery. And safecracking is the completely distinct offense, as the vast majority of the Michigan cases say, and as the two unpublished Sixth Circuit cases say. What that first clause says is, You shall confine, maim, injure or wound or attempt or threaten to confine, kill, maim, injure or wound any person. And that is because confinement typically takes place in the course of it's an armed takeover of the entire bank. You are trying to either get into the vault, or you want to make sure you can get behind, you can collect money not just from one teller. That's the way to look at it, but that's not what the legislature said. They just said, confine. Right. But that then gets us into an issue that this court has spoken to relatively recently, which is whether a fanciful suggestion of how a crime could be committed is enough to put a roadblock in the path of the modified categorical analysis of the prevention of us getting to look at the definitive charging documents that establish exactly what happened. And that's all true, except when the statute is plain. And our cases have said when the statute is plain, that's the end of it. We don't go any further than that. Let me ask you another question about the statute. Attempt to compel. Or threaten to confine. Attempt to compel. No, it reads, shall, by intimidation, fear, or threats, compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault, or other depository of money. Where is the force in attempt to compel? And I see threat to compel. I got your force there. What about attempt to compel? Attempt to compel could be, I convince one of my friends that works at the bank to give me information. How is that not, how in terms of force? In that three-word phrase, attempt to compel, the operative word is the third one. Not attempt. It's what the attempt is about. It's about compelling. Any dictionary of conditions is going to tell us that compulsion always means depriving someone of choice. The kind of case you're talking about, and I've prosecuted cases. And I have seen cases where people have attempted to compel someone to leave the door open that may work at the, and this is not just to a bank, that may work at a store. So attempt to compel, I guess what I'm asking is where is the force? And compel does not always mean force or, so. This is my disagreement with what you're suggesting, Your Honor. I think what you're talking about there is attempt to persuade. And that happens a lot, too, in the bank robbery context. Because what happens is people who know someone who works at a bank will try and persuade that person to do something to enable them to get access to the bank. But that then would be an offensive bank larceny. It would not, in terms of federal statute, fall under the category of bank robbery by intimidation, which is in 2113A as opposed to 2113B. Okay, and then the next question I had, Mr. Patel brought up that this statute not only applies to banks. It applies to someone's home. It can apply to a store. And so how is that, how are we to use that in comparing it to the federal statute? The bottom line is that it's still a statute about robbery, an armed robbery. I mean, the facts that were described in court itself certainly involve egregious use of force. So I don't see that as being an issue. I just want to run it down. We have the factual review of the statute, which I submit is extremely clear, that safecracking is set aside and not only set aside at the end to cover a totally different type by which means, by which this crime could be prevented. Mr. Gray, if you can stay in front of the mic, that would be helpful. And which would probably entail a less serious punishment, because it doesn't involve exercising the threat of force or actual force against a person the way the other three parts of the statute do. We have the Michigan decisions and the vast majority of the Michigan decisions. You run the words, I think, you know, two offenses, assault of bank robbery, and safecracking through Westlaw, you will find a lengthy string of Michigan decisions that use those terms and speak in those terms. And the Ford decision in Clemens, even calling them outliers is essentially unfair because as Judge Rushing was pointing out, that's not the issue that was before the court in those cases. Can I ask you, sorry, this is a little different question, but are you aware of other states who include confinement in their robbery statutes? And it's fine if it's fine if you didn't do a 50-state survey. I'm just curious, because it's something that we brought up in Johnson, is that we wouldn't expect that Congress meant to prevent, you know, half the states' robbery offenses from being included in what it means to be a robbery. And we noted that, you know, 20-some states don't have a presence requirement, right? So we disregarded that. And I just don't know if other states use confinement. I've attempted to look and haven't found much, but it sounds like you're making the point that that has more to do with safe-cracking if a person is not threatened or harmed. And so maybe that would come under a different state statute. Yeah, because confinement has nothing to do with, in most instances, presumably have little or nothing to do with safe-cracking. The whole idea of safe-cracking is that you get in there sometime when nobody is around and then you try and break open the safe either by violent means or by using dexterity and sensitivity in your fingers. But confinement is very frequently something that happens in bank robberies, typically with the tellers all being ushered back into the break room or into the vault and shut up and locked in there. And so I would not be surprised if many states treat that as an element of bank robbery, because, I mean, it's often one of the facts of bank robbery. And of the worst, the most serious, the most heinous kinds of bank robbery. And I would just conclude, if I may, I always like to quote Oliver Wendell Holmes, if I possibly can. And he once stated that a word is not a crystal, transparent and unchanging. It is the skin of a living thought and may vary greatly in color and content according to the circumstances in which it is viewed. And in this case, circumstances in which Ford was viewing these issues were in the context of that state judicial civil war over the interpretation of double jeopardy. The federal civil wars, over the categorical approach, were just beginning to loom at that time. As a matter of fact, Mr. Patel and I crossed swords in one of those cases back in 2006 in his first appearance before this court. So this is something that's been, that was still down the road at the time the Michigan court was speaking, and it was focused on its own internal jurisprudential civil war over something completely different. Thank you. All right. Thank you, Mr. Gray. Mr. Patel, you've got a couple minutes in rebuttal. Thank you, Your Honors. So just a few things here. It sounds like maybe some of the judges here think that Ford is ambiguous. We submit that it isn't. It clearly establishes that Michigan bank robbery is indivisible. We have to accept what it says. Michigan bank robbery is a single offense with alternate means. But even if not, Your Honor, I don't think my friend, Mr. Gray, has said anything to confirm that Michigan bank robbery is divisible, and that just gives us a test. If that is the case, then this court has to assume that it's indivisible. If there's any ambiguity, the government has amended its heavy burden to prove with certainty that the statute is divisible. So that must end the inquiry, and this court must find that it's indivisible and it doesn't qualify. And then, Your Honor, Can I just clarify? So that means you definitely don't want us to certify, right? Well, Your Honor, if this court isn't going to accept the Mathis default rule and find that it's indivisible, then, yeah, I would ask you to certify, but the Supreme Court tells us how to decide this case. And so because there's ambiguity, that means that we win. And I can send the court numerous, numerous cases, case after case after case, where it was ambiguous, and the court held we have to find that it's indivisible because the Supreme Court has said that the demand for certainty hasn't been satisfied. And alternatively, thank you, Judge Benjamin, for bringing up another point about the attempt to compel. Of course you can attempt to compel somebody to do something without the use of force. You could say, if you don't give me your money, I'm going to go tell your wife that I'm having, or she's having an affair with somebody. I mean, something like that. It's not limited to force or threat of force. So you have confining, and as Judge Benjamin said, you also have attempt to compel. And Judge Agee, as you said, it's in the statute. This isn't about fanciful hypotheticals. This court in Gordon v. Barr said if the plain terms of the statute, criminalized conduct that falls out of the crime of violence definition, that's the end of the inquiry. And the realistic probability... Do we have any precedent from Michigan about what confinement means in this context? Because you're right, if it's just in the statute, we don't need examples of that statute being enforced that way. I guess what's hanging me up a little bit is, what do they mean by confinement here? Do they really mean the secret locking of someone in a room that the person never knows about and is never scared? Or do they mean something... The district court, I guess, took recourse to regular robbery and said, well, in Michigan, that always involves fear. And you point out there are different elements there. But I didn't find anything in Michigan telling us about confinement because, as the government says, confinement always came up in cases where people were being overtly threatened. So, Your Honor, I looked also, and I couldn't find anything defining it. But what Michigan says is when a term isn't defined, then you go to the law dictionary, the ordinary meaning. And what I found in Black's Law Dictionary is that it means the act of imprisoning or restraining another. And that conduct is exactly the conduct that was described in the Harrington case, which involved unlawful restraint, and the court found that doesn't qualify. The violent felony, also hostage-taking, uses similar unlawful restraint, and the court found that doesn't qualify. False imprisonment uses sometimes unlawful restraint cited to one case in my brief with respect to that also. So I think that's the definition that we have to go with in Michigan. And that tells us it doesn't equal a force or threat of force against another. All right. Thank you very much, Mr. Patel. We're going to come down and greet counsel and take a very brief recess and then come back for our last case. The Honorable Court will take a brief recess.
judges: G. Steven Agee, Allison J. Rushing, DeAndrea Gist Benjamin